NETTIE HUNT et al., *Appellees,* v. JOHN D. REMSBERG, as Administrator, etc., *Appellant.*

No. 18,331.

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Money Belonged to Estate—Res Judicata.* The decision in *Hunt v. Remsberg,* 83 Kan. 665, 112 Pac. 599, was an adjudication that the insurance money involved belonged to the estate, and not to the plaintiffs, and was binding on the parties.

2. —— *Same.* This appeal amounts to a second application for a rehearing of the former case, and the decision thereof and the opinion therein are adhered to.

Appeal from Allen district court.   Opinion filed July 5, 1913.   Reversed.

*Charles H. Apt,* and *Frederick G. Apt,* both of Iola, for the appellant.

*Frank R. Forrest,* and *C. S. Ritter,* both of Iola, for the appellees.

The opinion of the court was delivered by

WEST, J.: This case presents a question of *res judicata* and no other demanding consideration.   After the decision in *Hunt v. Remsberg,* 83 Kan. 665, 112 Pac. 599, the plaintiffs filed in the probate court an application for an order requiring the administrator to pay to them the proceeds of the insurance.   The administrator set up the former adjudication which defense was sustained by the probate court, and on appeal to the district court this ruling was reversed and the administrator was ordered to pay the insurance money to the plaintiffs in equal shares.   The defendant appeals.

The administrator insists that the former adjudication settled the rights of the parties and was therefore binding and final.   The plaintiffs contend that the former decision was wrong *per se,* and having been concurred in by a majority only of the court is not to be considered obligatory as a precedent.   Their serious contention, however, is that the real question now at issue was not raised in the former action and therefore has not been adjudicated.   This proposition is based upon the theory that while it was decided that the administrator was entitled to collect the insurance money it was not determined what he must do with it after its collection.

The former action was upon the administrator's bond to recover the insurance money received upon the life of John H. Hunt and used as a part of his estate.   It was claimed that this money belonged exclusively to the children and was no part of the estate, and that neither

the administrator nor the probate court had any right to assume control or to exercise dominion over it. The terms of the policy were considered and stated in the opinion, and although it was said (p. 667) that it was contended by the plaintiffs that the proceeds belonged to the legal representatives, and that the children were special representatives, while it was contended by the defendants that the administrator was the legal representative and that this constituted the sole question in controversy, it was also said:

"We do not know why he neglected to appoint another beneficiary. We only know that he allowed to stand unchanged language which in its ordinary meaning justified the interpretation placed upon it by the insurance company, when it paid the money, and by the administrator and the probate judge who officially exercised jurisdiction over it. The ordinary meaning of the language used would lead to this conclusion, and we are unable to find anything either in the instrument where this language is used or elsewhere in the case which to our minds shows any other intent. The judgment is reversed, with directions to enter costs in favor of the defendants." (p. 669.)

In a specially concurring opinion by Mr. Justice Benson it was said:

"The policy was made payable directly to the legal representative, subject only to the death of the wife before the death of the insured. It was not issued to creditors but for the benefit of the estate. Whether creditors might ultimately share in it was a contingency which, if contemplated at all, was not prohibited by the statute, nor by public policy, which is not inimical to the payment of debts. The other statutory provision only declares that in the absence of an agreement or assignment to the contrary the policy shall inure to wife or children. Here the agreement to the contrary is expressly made in the contract. The statute thus recognizes the right to make insurance available to creditors if the insured so desires. Both of these statutory provisions, however, relate to insurance payable to creditors directly, and not to any contingent or pos-

sible benefits they may receive through the administration of an estate." (p. 671.)

Again, after stating that the answer admitted that the money had been disbursed under the orders of the probate court and the administrator had duly performed all the orders and judgments and had not violated any condition of the bond, it was said:

"There is no averment in the petition that the appellees ever presented their claim in the probate court, although the sum due on this policy appeared on the inventory. A grave question is presented whether, even if the appellees were entitled to the fund, they should not have presented their claim in the probate court. The right of the administrator to collect the money is expressly held in *Kelley v. Mann*, 56 Iowa, 625. The fund was thus brought within the jurisdiction of the probate court, and the question remains whether there is any breach of the bond until there is a violation of some order of the court respecting its distribution." (p. 673.)

In the dissenting opinion of Chief Justice Johnston, concurred in by Justices Smith and Porter, it was said:

"The declared purpose of the statute was to provide protection for widows, heirs, orphans and legatees and deceased members. In cases of doubt the intention of the insured is an important element in determining the meaning of words used in a certificate. Now, the assured had a wife and children, and he became a member of an association that was organized to provide insurance for wives and children. He designated his wife as a beneficiary, and when his wife died, the children still needed the protection. He did not, it is true, name another beneficiary after the death of his wife, but it is not to be supposed that he was planning and intending to make provision for the protection of creditors at the expense of his children. It is rather to be inferred that he regarded the term 'legal representatives' as broad enough in its meaning to include his children, and so far as intention can go it would not take much evidence to raise the presumption that he intended the insurance for his children and not for his creditors." (p. 675.)

23—90 Kan.

The closing sentence of the syllabus is:

"The administrator was the legal representative of the deceased within the meaning of that term, and was entitled to the money as a part of the estate of the insured."

It would be difficult to use language which could more plainly show the views of the various members of the court that the majority opinion held that the estate and not the children were entitled to the proceeds of the insurance, and that the administrator having used the money and paid it out as belonging to the estate could not be required to pay it to the children. The very basis of the action was the claim that the children were entitled to it by the terms of the policy, in accordance with the intention of the deceased and the provisions of the Iowa statute under which the insurance company was organized, and had this claim been successful, the inevitable result would have been to render judgment in favor of the plaintiff against the administrator instead of rendering judgment in favor of the latter for costs and expressly holding and saying that the children ought not to recover. This question, therefore—as to whom this money rightfully belonged—was adjudicated and determined. The decision, therefore, became the law of the case and binding on all the parties.

The only remaining question is whether the law as thus declared is now to be changed by a departure from the former holding. The court, including those who dissented, is not disposed to make such departure. The very vigorous oral argument of plaintiffs' counsel and the brief and authorities cited have been given full consideration, but the controversy having been once decided the former ruling must stand.

The judgment is therefore reversed with directions to enter judgment in favor of the defendant for costs.