## No. 10,041.

GABRIEL RAWITZKY vs. LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

A railroad company is not responsible in damages for ejecting a passenger on the ground that the ticket which he tenders for his fare had expired by limitation under its very terms, at the time that it was tendered.

A stipulation in a ticket sold as good for thirty days, that the purchaser shall have himself identified as such at the terminal point of his journey, and that the ticket shall be good fifteen days only after date of identification, is not illegal or unreasonable, but is binding on the party who thus contracts with the company.

A party suing on such a contract, and alleging the same will not be allowed by parol to prove a different contract.

APPEAL from the Civil District Court for the Parish of Orleans; *Rightor*, J.

---

*Leonard, Marks & Bruenn*, for Plaintiff and Appellee :

1. Parol evidence to show statements of company's regular ticket agent is admissible. 2 Lea (Tenn.) 594; 76 Penna. 66; 63 Me. 298, 302.

2. Representations concerning rights under ticket made by agent are within the scope of his authority and the company is bound by them. 10 Neb. 250; 11 Fed. Rep. 698.

3. Actual as well as exemplary damages will be allowed for wrongful expulsion from railway train, and courts are to take into consideration the humiliation to personal feelings, the degradation, as well as the loss occasioned by such expulsion and resulting therefrom. 19 Ohio St. 157; 68 Mo. 329; 79 Ill. 584; 55 Ill., 185; 46 Tex, 272; 90 Ill. 126

4. The carrier is bound to make good what the ticket imports on its face, and the passen-

ger is not bound by any rule or usage of the company, not positively shown to have been made known to him. 47 N. Y. Sup. (Jones & S.) 282.

5. The damage caused by the unwarranted expulsion of plaintiff, shown to have resulted in the destruction of his entire business and credit, and the judgment of the lower court should be affirmed.

*Bayne, Denegre & Bayne,* for Defendant and Appellant:

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff claims damages in the sum of ten thousand dollars on the ground that he was illegally and wrongfully ejected from one of the defendant company's trains on which he was a passenger.

The defence is substantially that the ticket which plaintiff tendered to the conductor for his fare had expired by limitation under the very terms stipulated therein, as accepted by plaintiff under his signature; and that when called on to pay his fare as an ordinary passenger, plaintiff had refused compliance, preferring to leave the train at a way station.

Defendant appeals from a judgment of $5,000 in favor of plaintiff.

The facts, as we gather them from the preponderance of the evidence, are as follows:

In the summer of 1886, the defendant company offered for sale tickets to go from New Orleans to Toronto, Canada, and return, at the reduced rate of $42 for the round trip, good from the first of June to the 31st of October of that year; and at the same time offered tickets for the same trip good for thirty days from the date of purchase, at the still further reduced rate of $26 75. On the 8th of July plaintiff bought a ticket of the latter description, and left for his journey on the same day. Written lengthways on the face of his ticket, in red ink, were the words: "Limited to August 8, 1886"; and the ticket also contained the signature of the company's agent and that of plaintiff, as well as mention of the date of sale. Among numerous other conditions of the contract printed on the ticket, was the stipulation which bound the purchaser, on his departure returning, to identify himself as such by writing his name on the back of the contract in the presence of the ticket agent at the point to which the ticket was sold, and by which the purchaser agreed "that this ticket and coupons shall be good, returning, fifteen days only, after such date."

It is then shown that plaintiff was thus identified at the ticket office in Toronto on the 14th of July, and that he was ejected from the company's train at a point between Cincinnati and Louisville on the third of August of that year, under the following circumstances:

Rawitzky vs. Railroad Company.

A short time after leaving Cincinnati, on his way to New Orleans, when plaintiff was called on for his fare by the conductor in charge of the through train from Cincinnati to Louisville, Ky., plaintiff tendered the ticket herein above described, and on which he had travelled from Toronto to Buffalo, N. Y., and thence to Cincinnati, whereupon he was informed by the conductor that the ticket could no longer avail him, for the reason that under its terms, it had expired by limitation, as more than fifteen days had run from the date of identification at Toronto, July 14th, to the day on which the ticket had been tendered by plaintiff in payment of his fare. After considerable discussion, during which, plaintiff insisted that his ticket was yet good, as it was limited to August 8th, and during which he was advised by the conductor to pay his fare, about $3 50 to Louisville, where he might make suitable arrangements at the general office of the company, at which place only, he could find an officer empowered to revive the extinct contract, offering at the same time to give him a printed receipt of the amount paid, which he might perhaps recover at that office, and on the persistent refusal of plaintiff to pay such fare, he was ejected at a way station at about an hour's run west of Cincinnati. At that point he telegraphed the facts to a friend in this city, who made necessary arrangements to secure a ticket to carry him from Louisville to New Orleans, informing him by telegraph that he would find such ticket at the company's general office in Louisville.

Plaintiff then bought a ticket to the latter point where he found his ticket for New Orleans, at which place he arrived in due time, having been detained twenty-four hours by the unpleasant incident. There is no proof or even an intimation that violence or harsh means were used in ejecting plaintiff from the train. Hence the pivotal question in the case, is to ascertain whether the company through its agent, had the legal right to conclude that by the acts of plaintiff its contract with him had expired on the third of August, thereby justifying the defendant in refusing to carry him further on the ticket which he had bought from it on the 8th of July previous. That question suggests the discussion of two propositions:

First—Whether the stipulation contained in the contract, by which a ticket sold as good for thirty days may expire before that time, by the act of the purchaser, if he happens to have himself identified at the point of terminus of his journey, more than fifteen days before the expiration of the thirty days or before the time at which he seeks to use the ticket, is in law a reasonable condition.

4

Second—Whether that clause was in law and in fact a part of plaintiff's contract with the defendant company.

I.

We do not understand that plaintiff's counsel, either in their pleadings or in their argument, contest or dispute the legal and binding force and effect of the clause as part of a carrier's contract; and at this stage of railroad jurisprudence, such a contention would be of little or no avail.

All the writers on railroad law, and numerous decisions of the courts of the country, concede the right of common carriers to include such restriction in their contracts for the transportation of passengers.

Thompson on Carriers, pages 70 and seq., p. 375; Hutchinson on Carriers, §575, 581; Woods on Railroad Law, p. 1407, 1438, 1439; 37 Michigan 342, Frederick vs. Marquette, etc.; 67 Illinois, Churchhill vs. Chicago Railroad, p. 390; 54 Wisconsin, Yorton vs. Milwaukee Railroad, p. 234; Pennington vs. Philadelphia, Wilmington and Baltimore R. R. Co., American and English railroad cases, p. 310; Howard vs. Chicago, St. Louis and New Orleans R. R. Cos., American and English railroad cases, 313, same p. 345.

It appears from the record in this case that the object in requiring the identification of the purchaser, and of the limit of use of tickets after fifteen days from the date of such identification, is to check, as much as possible, any speculation or trading in tickets which are sold at greatly reduced rates. And although the compliance with such a condition entails considerable annoyance on the purchaser, it does not appear that the condition is reprobated by law, or is liable to the objection that it is unreasonable. A regulation of similar import was recently submitted to judicial test in this State, and on that occasion it was held by this court that:

"The rules of a city railroad company, acting under a contract with the city, which requires the company to carry passengers over two sections of its line for one fare, which require such passenger to keep and show, undetached by him, a coupon ticket as a voucher of his right to continue on the car beyond a given point, are reasonable in law."

In that case the company was justified for having ejected a passenger who had tendered the required voucher, but already detached, and who refused to tender an undetached voucher or to pay regular fare. A partial compliance with the rules of the company was held insufficient to entitle the passenger to continue his ride on the second section of the company's line. De Lucas vs. Railroad Company, 38 Ann. 930 and authorities cited therein.

We therefore hold that the stipulation contained in a ticket, by which the use of the same is restricted to fifteen days after the identification of the original purchaser at the terminus of his journey, as evidenced by the ticket in this case, is binding on such purchaser. As a part of the contract it must be enforced, and a refusal of compliance by the purchaser exposes him to be ejected from the company's trains or cars.

"A party who refuses to comply with the mode of paying his fare as agreed upon between himself and the carrier is under the same condition of one who refuses absolutely to pay any fare at all; and hence, the only alternative is to carry him for nothing, or to eject him if he refuses to leave when requested so to do." De Lucas' case, 38 Ann. 933.

But plaintiff's contention is that the clause was not a part of his agreement with the company, and this leads us to the consideration of the second point of discussion.

## II.

According to the views taken of their case by plaintiff's counsel, that contention is the crucial text of the controversy, for, as we have already said, they do not put directly at issue the right of a common carrier to incorporate such a condition in a contract of transportation.

Plaintiff's point is that the clause in question was intended as a part of the contract under the company's original plan or scheme, which consisted in selling tickets to Toronto and return at the rate of $42 for the round trip, and good from the date of purchase, which could be June the first to the 31st of October following, and that although, for convenience sake, the printed form of tickets under said original scheme, was used to evidence his contract with the company, the clause in question was not a part of his obligations under his con- tract, which came under a special and a different scheme, by means of which all tickets sold were good for thirty days independently of the date of identification at the terminal point of the journey. But the argument is not sustained by the record. Under a proper construction of his own pleadings, plaintiff is estopped from urging that contention.

For there he in terms admits that the clause in question was a part of his contract.

His petition contains the following unambiguous averment:

"Your petitioner represents that after his arrival at the said Toronto, Ontario, he being desirous of returning to the said city of New Orleans, petitioner repaired to the ticket office of the Grand Trunk Rail-

way, as in his said ticket directed, and as under his contract with the said Louisville and Nashville Railroad Company he was bound to do, and then and there identified himself as the original purchaser of the said ticket issued to him as above set forth, signed his name in his proper hand-writing, and which signature was witnessed by the said ticket agent at said Toronto, who also signed his name below that of petitioner, all of which more fully appears from the said ticket hereto annexed as part hereof."

Now, from an inspection of the ticket it appears as hereinabove stated, that the requirement of identification is a part of the clause which limits the validity of the ticket to fifteen days after the date of identification, and that it appears nowhere else in the contract. By what rule of law or of pleading can plaintiff claim the right to recognize a portion of a clause in a written contract, bearing his signature, without restriction or qualification, and to repudiate the other portion of the same clause, and contained in the same sentence? Parties litigants must be bound by their pleadings.

An effort was made to show, by parol testimony, that the contract as printed, had been modified by the company's agent, who sold the ticket, so as to strip it of the obligation on the part of the purchaser to use the ticket within fifteen days after identification, and evidence was admitted to that purpose, over defendant's objections. The evidence should have been rejected under the effect of plaintiff's own pleadings as hereinabove stated. But, even if admissible, the testimony on that point is not sufficient to sustain the contention.

The true construction of the ticket bought by plaintiff on July 8, 1886, as applicable to this issue, is that the ticket was good for his fare to Toronto and return until the 8th of August following, on condition that he should be identified as the original purchaser at Toronto, and that, having been identified on the 14th of July, he should have completed his return trip, on or before the 29th of July, or that to be entitled to use the ticket as late as the 8th of August, he should have been identified only fifteen days before that date.

We are satisfied that plaintiff was in good faith, and that his misfortune can be attributable only to his failure to properly understand all the conditions stipulated in the contract. He admits that he had never read those conditions before he was ejected from the train on the 3d of August.

The whole trouble, as we gather from his testimony, was that Toronto was not the objective point of his journey, and that his sole purpose in visiting that city was to be identified by the agent of the

company at that place, in compliance with the stipulation to that effect in the contract.

His trip was intended to visit friends and relatives at Buffalo, New York, where he sojourned from the 15th of July to the 2d of August.

He must, therefore, be held in law as responsible for all the troubles which befell him on the occasion which is the subject-matter of this litigation.

It is doubtless a hard case on him, and he must have suffered great annoyance and humiliation at being ejected from a train on which he believed he was entitled to all the privileges of a passenger.

But under the evidence in the case, and in keeping with well-settled jurisprudence, we have no authority to inflict damages on the corporation, as it violated no part of its contract.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and that there be judgment in favor of defendant rejecting plaintiff's demand, and dismissing his action at his costs in both courts.